**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TRACI L. BAKER,

                Plaintiff,

vs.                                                Case No.  3:05-cv-1336-J-MMH

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security
Administration,

                Defendant.
_____/

## **OPINION AND ORDER**[2]

This cause is before the Court on Plaintiff's Complaint for Judicial Review of a Final Decision of the Commissioner of the Social Security Administration (Dkt. No. 1; Complaint), seeking judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under the Social Security Act. Administrative remedies have been exhausted, and the case is properly before the Court.

---

    [1]     Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2]     The parties consented to the exercise of jurisdiction by a United State Magistrate Judge. See Order of Reference (Dkt. No. 10).

## I.     Background

At the time of the most recent administrative hearing, Plaintiff was 44 years old and living with her fourteen year old son in a mobile home. Tr. at 579-80.[3] She had completed the tenth grade and earned a GED. Id. at 581. Plaintiff had also previously worked as a cashier for various businesses. Id. at 583-84.

Plaintiff filed an application for SSI on May 20, 1996, alleging a disability onset date of January 1, 1990. Id. at 163.[4] In support of this application, Plaintiff asserts that her cancer, possible lupus, anti-social behavior, back injury, and emotional and behavioral problems keep her from working because she has a skin rash on her face and arms, she is constantly in pain from her back problem, she can not lift, sit, or stand, and the emotional stress is too much for her to handle. Id. at 183. The application was denied initially and on reconsideration. Id. at 230, 228. At Plaintiff's request, id. at 172, Administrative Law Judge (ALJ) Patrick F. McLaughlin held a hearing on March 3, 1999, id. at 52.[5] During the hearing, Plaintiff, who was represented by counsel, and Fred Collins, a Vocational Expert (VE), testified. Id. Thereafter, on April 21, 1999, the ALJ issued a decision, denying Plaintiff's application. Id. at 12-20. Plaintiff then requested review by the Appeals Council (AC), but

---

[3] The Transcript of Administrative Proceedings (Tr.) was filed along with the Commissioner's Answer on April 24, 2006. See Answer (Dkt. No. 7) at 3.

[4] Prior to filing the instant SSI application, Plaintiff previously protectively filed an application for SSI on April 4, 1991, claiming disability since August 2, 1990. Id. at 156. This application was denied initially and on reconsideration. Id. An Administrative Law Judge conducted a hearing on May 14, 1992, and issued a decision denying benefits on May 29, 1992. Id. at 156-60. Plaintiff did not appeal this decision. Id. at 552.

[5] This hearing was initially held on April 8, 1998, but the ALJ continued it for further development of Plaintiff's medical records. See id. at 48-50.

the request was denied on January 25, 2001. Id. at 4-5. Accordingly, Plaintiff filed a complaint in the United States District Court, Middle District of Florida, see id. at 310, and on September 13, 2002, the Honorable Howard T. Snyder, United States Magistrate Judge, issued an Opinion and Order, reversing the Commissioner's decision and remanding the case, see id. at 621-35. In his Order, Judge Snyder instructed the Commissioner to consider, and if necessary to state the reasons for rejecting, the opinion of Robert B. David, Ph.D., a consultative psychologist, and to propound a complete hypothetical question to the VE. See id. at 630-31, 634.

On remand, the AC vacated the April, 1999, decision and remanded the case to the ALJ for further proceedings. Id. at 638. Following the remand, ALJ McLaughlin held another hearing in this matter on August 18 and 19, 2004. Id. at 564, 577. Plaintiff, who was represented by counsel, and David Jackson, a VE, testified at the hearing. Id. at 564. On September 2, 2005, the ALJ again issued a decision denying Plaintiff's application. Id. at 561. In doing so, the ALJ found Plaintiff was not disabled because she could perform work as a charge account clerk, an addresser, and a call out operator. Id. at 559. There is no evidence that the AC assumed jurisdiction of this case, so the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 416.1484(a). Plaintiff timely filed the Complaint on December 30, 2005. See Complaint at 1.

**II.    Standard of Review**

"Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[6] See 20 C.F.R. § 416.920(a)(4)(i)-(v) (2004). While the claimant generally bears the burden to prove that he or she is disabled, see id. § 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). It does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); see

---

[6] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.
Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled.
See 20 C.F.R. § 416.920(a)(4)(i)-(v) (2004); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

also Dyer, 395 F.3d at 1210; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam).

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. See Moore, 405 F.3d at 1211; Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per

curiam). The application of legal principles is closely scrutinized. See Doughty, 245 F.3d at 1278. Indeed, when the Commissioner has used incorrect legal standards or failed to explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision. See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.     Summary of Argument

Plaintiff raises two issues on appeal. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Dkt. No. 11; Plaintiff's Memorandum) at 1. Initially, Plaintiff asserts that the ALJ improperly rejected the opinion of Dr. David, a consultative psychologist. Id. at 6. Next, Plaintiff argues that the ALJ should have found her disabled in light of the VE's testimony. Id. at 10. Accordingly, Plaintiff seeks an order directing the Commissioner to award her disability benefits. Id. at 15.

### IV.     Discussion

#### 1.     Robert David, Ph.D.

Plaintiff asserts that the ALJ's treatment and rejection of Dr. David's opinion was in error. Id. at 6. In particular, Plaintiff argues that, contrary to the ALJ's findings, Dr. David's opinions were actually shared by three examining psychologists, Sherry Risch, Ph.D., Henry Bates, Ph.D., and Patricia Boger, Ph.D. See id. at 9. The Commissioner, on the other hand, contends that "[t]he ALJ committed no error in discounting Dr. David's opinion and gave proper reasons in his decision for reaching this conclusion." Memorandum in Support of the Commissioner's Decision (Dkt. No. 13; Commissioner's Memorandum) at 6.

Dr. David evaluated Plaintiff's mental status on July 17, 1996. See Tr. at 383. During the evaluation and testing, Dr. David noted that Plaintiff "worked to the allowable time limits and employed an active and deliberative problem-solving approach . . . ." Id. at 384. He then found that Plaintiff's testimony of hallucinations, paranoia, and anhedonia was "consistent with a mood disorder." Id. at 385. Further, Dr. David indicated that Plaintiff's disorder was such that it "prevent[ed] her from maintaining gainful employment." Id. He concluded that Plaintiff met the criteria for "DSM-IV classifications of Bipolar II Disorder, Depressed, Severe With Psychotic Features and Cannabis Abuse, 305.20." Id.

Almost three years after his evaluation of Plaintiff, on March 4, 1999, Dr. David completed a Mental Residual Functional Capacity (RFC) Assessment. Id. at 546. In the Mental RFC Assessment, Dr. David indicated that Plaintiff's capacity to perform certain work related tasks ranged from "fair" to "poor to none." Id. at 546-48.[7] For example, Dr. David opined that Plaintiff had poor to no ability to remember or understand work-like procedures, carry out short and simple instructions, or complete a normal workday and workweek without interruptions from psychologically based symptoms. Id. at 546-48. He further indicated that Plaintiff had only a fair ability to understand and remember very short and simple instructions, make simple work-related decisions, and maintain socially appropriate behavior. Id.

After discussing Dr. David's opinions from the evaluation and the Mental RFC Assessment, see id. at 555-56, the ALJ concluded that "all of the remaining evidence of

---

[7] A fair rating indicates that the person's "[a]bility to function in this area is seriously limited, but not precluded," while a poor to none rating indicates that the person has "[n]o useful ability to function in this area." Id. at 546.

record is in direct contrast to Dr. David's findings." Id. at 556.  He then contrasted Dr. David's opinions with those of Sherry Risch, Ph.D., Henry Bates, Ph.D., Patricia Boger, Ph.D., and Irena Assefa, M.D. Id.  The ALJ discounted and rejected Dr. David's opinions "as being irrelevant, and at odds with three [sic] other physicians who examined the claimant . . . ." Id. at 556.  He further stated that "Dr. David's opinions are shared by no one and [he] is only an examining psychologist." Id.

Initially, the Court notes that Dr. David examined Plaintiff on only one occasion.  See id. at 383.  Although a one time examiner's opinion is not entitled to deference, see McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam), the ALJ is, nevertheless, required to consider it, see 20 C.F.R. § 416.927(d).  In this case, the ALJ throughly discussed Dr. David's opinions from both the 1996 evaluation and the Mental RFC Assessment before rejecting them.  See Tr. at 555-56.  Thus, the Court need only determine whether the ALJ's rejection of Dr. David's opinions is supported by substantial evidence.

Beginning with Dr. Risch's opinions, the Court finds that the ALJ did not err in determining that they were inconsistent with the high degree of limitations indicated by Dr. David.  After examining Plaintiff on July 15, 1998, Dr. Risch completed a Psychological Evaluation and a Supplemental Questionnaire, concerning Plaintiff's possible mental limitations.  See id. at 521-29.  During Dr. Risch's evaluation, Plaintiff indicated that she was unable to work because of difficulties with her children and that while she did the shopping, she lacked the energy or desire to perform other housework.  See id. at 522-23.  Having administered psychological testing, Dr. Risch stated that Plaintiff's profile was invalid and "consistent with either an individual exhibiting 'cry for help' or malingering." Id. at 523.  At

the end of the Psychological Evaluation, Dr. Risch diagnosed Plaintiff with "Axis I - Bipolar II Disorder 296.89; Axis II - Borderline Personality Disorder 301.83; Axis III - Chronic Back Pain, Asthma; Axis IV - Recent Separation from Husband, Dysfunctional Family Dynamics, Financial Difficulties, Unemployment; Axis V - Current GAF-65,"[8] and concluded that Plaintiff was "able to work but psychosocial stressors and physical limitations appear to be the predominant factors impeding her ability to do the same." Id. at 524. Additionally, as noted by the ALJ, in the Supplemental Questionnaire, Dr. Risch indicated only "'slight,' 'mild,' and 'moderate' restrictions in her functional assessment of the claimant." Id. at 556. In particular, Dr. Risch found that Plaintiff's ability to understand, carry out, and remember instructions and to perform simple, repetitive tasks was not limited. Id. at 527-28. Dr. Risch further commented that Plaintiff "would benefit and function better with psychotropic med[icine]s, but refuses to take them." Id. at 528. Based upon a review of the record, the Court finds the ALJ's conclusion, that Dr. David's marked limitations were at odds with Dr. Risch's assessments, is supported by substantial evidence.

With regard to Drs. Bates and Boger, contrary to Plaintiff's suggestion, neither doctor actually examined Plaintiff. However, each doctor did complete a PRT form and a Mental RFC Assessment form after reviewing Plaintiff's treatment notes. See id. at 315-27, 397-409.[9] In his decision, the ALJ stated that Drs. Bates and Boger "indicated that the claimant

---

[8] A GAF, or Global Assessment of Functioning, score between 61 and 70 indicates a person with some mild symptoms or some difficulty in social or occupational functioning, but the person generally functions pretty well and has some meaningful interpersonal relationships. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000).

[9] While an ALJ may not ignore the opinions of non-examining sources, he or she is also not bound by them. See Social Security Ruling (SSR) 96-6p. In addition, generally, the opinion of a medial source that has examined the claimant is entitled to more weight than the opinion of a medical source that has not.
(continued...)

was 'not significantly limited' in most areas." Id. at 556. The undersigned finds that, substantial evidence supports the ALJ's determination that Drs. Bates' and Boger's findings are inconsistent with Dr. David's opinions. Indeed, while Drs. Bates and Boger found that Plaintiff was often limited by deficiencies of concentration, persistence, or pace, they also noted that Plaintiff's activities of daily living and ability to maintain social function were only slightly to mildly limited. See id. at 322, 404. Further, aside from finding Plaintiff's ability to carry out detailed instructions or set realistic goals moderately limited, Dr. Bates indicated that, with regard to specific work activities, Plaintiff either was not significantly limited or did not evidence a limitation at all in the specific category of work activity. Id. at 325-26. Dr. Bates also concluded that Plaintiff "retain[ed the] ability to understand, recall and carry out simple oral instructions and to perform a simple, repetitive routine in a low stress setting." Id. at 327. Additionally, Dr. Boger noted that, at the time she reviewed Plaintiff's records, Plaintiff was not seeking mental health treatment or taking medications and that Plaintiff's use of cannabis may have accounted for her increased sleep and appetite and loss of energy. Id. at 398. Lastly, Dr. Boger opined that Plaintiff "appear[ed] capable of simple repetitive task[s]. Pain may affect concentration, pace, and persistence. Would benefit from appropriate medical treatment and regular adherence to prescription drugs." Id. at 408. Based upon the foregoing, the Court finds the ALJ's determination, that the opinions of Drs. Boger and Bates were inconsistent with the marked limitations indicated by Dr. David, is supported by substantial evidence.

---

[9](...continued)
See 20 C.F.R. § 416.927(d)(1).

Plaintiff's assertion, that the ALJ erred in rejecting Dr. David's opinion because it was consistent with Drs. Risch's, Bates', and Boger's opinions, is without merit. The Court further concludes that the ALJ's rejection of Dr. David's opinion is supported by substantial evidence. In addition to the fact that Drs. Risch's, Bates', and Boger's opinions were inconsistent with the very severe limitations indicated by Dr. David, the opinions of Dr. Morford, another nonexamining psychologist, were also less severe. See id. at 441-453. Indeed, Dr. Morford indicated that Plaintiff was not significantly limited in the majority of work activities. See id. Moreover, the treatment records of Dr. Irena Assefa, M.D., Plaintiff's family physician who treated her on several occasions between September 8, 1995 and July 9, 1997, see id. at 418-27, 472, 477-82, 505-14,[10] were also contrary to Dr. David's opinion. As stated by the ALJ, Dr. Assefa noted a "history of depression and stress but [did] not indicate that she referred the claimant for additional treatment or psychological counseling or that she believed that the claimant was severely limited in her ability to function." Id. at 556. Thus, the Court finds substantial evidence supports the ALJ's decision to reject Dr. David's opinions.

### 2. VE Testimony

Plaintiff next asserts that the ALJ failed to propound a complete hypothetical question to the VE because the question did not include the limitations suggested by Drs. Boger and Morford, two state agency non-examining physicians. See Plaintiff's Memorandum at 10-15. Specifically, Plaintiff points to their shared opinion that she has a "moderate inability to

---

[10] Thus, Dr. Assefa is considered a treating source, whose opinion is entitled to controlling weight unless the ALJ finds good cause otherwise. See 20 C.F.R. § 416.927(d).

complete a work day without an unreasonable number and length of rest periods." Id. at 15.[11]  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227; see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001).  However, specific diagnostic terms need not be used so long as "other descriptive terms adequately describe the claimant's impairments." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996)). Further, hypothetical interrogations need not include impairments properly rejected by the ALJ.  See McSwain, 814 F.2d at 620 n.1.

After reviewing Plaintiff's file, Drs. Boger and Morford each completed a PRT and a Mental RFC Assessment, on August 7, 1996 and December 17, 1996, respectively. See id. at 397-409, 441-53.  Among several other opinions in the Mental RFC Assessments, both doctors indicated that Plaintiff's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was moderately limited.  Id. at 407, 442.  In addition, Dr. Boger opined that Plaintiff's ability to maintain attention and concentration for extended periods and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was moderately limited.

---

[11] Plaintiff also asserts that the "ALJ committed error by not finding [Plaintiff] disabled in light of the vocational expert's testimony at the original [1999] hearing . . . ." Id. at 15.  However, as discussed above, the AC vacated the ALJ's initial 1999 decision and remanded this case for further proceedings.  Tr. at 638. Then, during the subsequent hearing, the ALJ propounded a new hypothetical question to the VE, see id. at 611-12, which the ALJ relied on in making his disability determination, see id. at 557-59.  Thus, the hypothetical question and the VE's answer from the most recent hearing is what is relevant to the instant review and not the hypothetical question propounded during the first hearing.  Accordingly, the Court will not address the substance of this argument.

Id. at 406. Dr. Morford also noted that Plaintiff had a moderately limited ability to work in coordination with or proximity to others without being distracted by them and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Id. at 441-42.

The ALJ did not include all of the moderate limitations from Drs. Boger's and Morford's Mental RFC Assessments in the hypothetical question propounded to the VE. See id. at 611-12. Indeed, during the hearing, the ALJ proposed a hypothetical question to the VE which assumed a person of Plaintiff's age, education, and vocational background. See Tr. at 611-12.[12] The hypothetical person was limited to sedentary exertional work[13] with a sit-stand option and to only occasional climbing, balancing, stooping, crouching, and crawling. Id. The ALJ further indicated that the person should have no exposure to pulmonary irritants, could engage in frequent gross and fine manipulation with the left hand, was right hand dominant, and could understand, recall, and carry out simple instructions. Id. Additionally, the person could perform simple routine tasks with low to moderate stress and with occasional contact with co-workers. Id. The VE then testified that, based on these limitations, the hypothetical individual could perform work as a charge account clerk, an addresser, and a call out operator. See id. at 617-18.

---

[12]   The ALJ actually proposed four hypothetical questions to the VE. See id. However, a review of the ALJ's decision reveals that he used the VE's testimony in response to the last hypothetical question as the basis for his determination that Plaintiff could engage in work in the national economy. See id. at 559. Thus, the Court will limit its discussion to whether that hypothetical question was adequate.

[13]   Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

While the ALJ appears to have included some of the moderate limitations in the hypothetical question, i.e., Plaintiff's ability to concentrate and work with others, he, nevertheless, did not include other specific moderate limitations from the Mental RFC Assessments.  In particular, the ALJ omitted Plaintiff's moderately limited ability to complete a normal workday or workweek without interruptions, perform at a consistent pace without an unreasonable number and length of rest periods, perform activities within a schedule, and maintain regular and punctual attendance.  These limitations relate to Plaintiff's ability to sustain activity in a normal workday and workweek.  See id. at 406, 441.  As such, they are relevant to whether Plaintiff can perform substantial work in the national economy.  Thus, the undersigned must determine whether the ALJ's omission of these moderate limitations requires remand for the ALJ to propound another hypothetical question to the VE.

In making this determination, the Court is guided by the prior Opinion and Order entered in this case on September 13, 2002.  As stated above, based on Plaintiff's arguments on appeal of the ALJ's 1999 decision, Judge Snyder previously remanded this case, in part, because the ALJ failed to propound a complete and adequate hypothetical to the VE.  See Tr. at 633.  Indeed, in that appeal, Plaintiff argued that the hypothetical question posed by the ALJ to the VE was inadequate because it did not include the moderate limitations identified in the Mental RFC Assessments.  Id. at 631.  During the analysis of this argument, Judge Snyder noted that the relevant hypothetical question from the 1999 hearing "included the following moderate limitations: the ability to carry out detailed instructions; setting realistic goals; completing a normal work week without the presence of some psychological stress which affects pace, and in dealing with co-workers without distracting

them or without being distracted." Id. at 632 (quotations and citations omitted).  Judge Snyder then found that although the hypothetical question included several of the moderate limitations indicated by Drs. Bates, Boger, and Morford in their Mental RFC Assessments, the ALJ omitted relevant portions of those Assessments from the question. Id. at 632-33. Specifically, Judge Snyder observed that during the March, 1999 hearing, Plaintiff's attorney propounded a rephrased hypothetical question to the VE which included the exact language from Drs. Boger's and Morford's Mental RFC Assessments, reflecting Plaintiff's moderately limited ability to complete a normal workday and workweek without an unreasonable number and length of rest periods. See id.  Judge Snyder determined that this limitation may have impacted the VE's testimony because, in response to the rephrased hypothetical, "the VE opined it would preclude employability or maintaining employment," id. at 633 (quotations omitted).  Accordingly, Judge Snyder concluded that the ALJ's failure to include all relevant limitations in the hypothetical question, or to specifically reject the relevant limitations, warranted remand. Id. at 634.

> In reaching this conclusion, Judge Snyder stated:
>
> [s]tate agency physicians are considered experts in evaluating Social Security disability, and their opinions must be considered.  It appears as if the ALJ accepted the limitations set forth in the assessments for the most part, but omitted certain relevant portions.  No explanation was provided for the omissions.  Therefore, the Court is not convinced the hypothetical was adequately specific or comprehensive.  In that regard, the case should be remanded for the ALJ to propound a complete hypothetical question, which includes an accurate rendition of the applicable limitations.  Should the judge choose to reject any of the limitations, substantial evidence must support the decision.
>
> Id. (citations omitted).

Nevertheless, on remand, the ALJ failed to comply with Judge Snyder's September, 2002 Opinion and Order. While the hypothetical question propounded by the ALJ during the 2004 hearing differs from the hypothetical question at issue in the previous order, compare id. at 611-12 with id. at 632, it is still flawed. Indeed, not only did the ALJ again fail to include the omitted limitations in the hypothetical question, he also did not specifically reject them. See id. at 552-61.[14]  Thus, as the ALJ omitted relevant limitations from the hypothetical question, it appears that this case is due to be remanded for the ALJ to comply with this Court's previous ruling.

In support of its decision, the Commissioner now asserts that the ALJ was not required to include the omitted limitations in the hypothetical question because they were contained in the first section, or Summary Conclusions section, of the Mental RFC Assessments and not in the third section, or Functional Capacity Assessment section, of the Mental RFC Assessments.  See Commissioner's Memorandum at 13.  Indeed, the Commissioner maintains that Drs. Boger's and Morford's opinions in part three of the Mental RFC Assessments "are generally consistent with the hypothetical question the ALJ gave to the VE," so the ALJ did not need to address the specific limitations from the Summary Conclusions sections. Id. Notably, the Commissioner fails to cite any support for this theory. See id. While the Commissioner appears to direct the Court to SSR 96-8p and 20 C.F.R. § 416.920a(d)(3) as support for its argument, see id. at 13, 11, the Court finds these authorities inapplicable to the circumstances at hand. These authorities note only that the

---

[14] The Court notes that from the content of the ALJ's decision, it appears that he believed the case was remanded only for him to address Dr. David's 1996 evaluation, see id. at 552, which may explain his failure to address this second reason for remand.

limitations and restrictions identified by a state agency physician in determining whether a mental impairment meets the severity requirement at steps 2 and 3 of the sequential evaluation "are not an RFC assessment." SSR 96-8p; see also 20 C.F.R. § 416.920a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."). However, the omitted limitations in this instance do not concern the severity of Plaintiff's possible mental impairments for a step 2 or 3 evaluation, but instead, represent limitations included in the Mental RFC Assessments, regarding Plaintiff's ability to sustain the indicated activity over a normal workday and workweek.

Additionally, the Functional Capacity Assessment section of the Mental RFC Assessment form instructs the reviewer to "[r]ecord in this section the elaborations on the preceding capacities. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function." Id. at 408, 443. In sum, this section merely allows the reviewer to clarify and elaborate on the limitations indicated from the previous sections and does not replace the limitations with a final RFC finding as suggested by the Commissioner. Thus, the Court finds the Commissioner's argument without merit. Accordingly, the Court will remand this case for the ALJ to comply with the Court's previous order, by propounding a complete and adequate hypothetical to the VE. Again, the Court notes that, to the extent the ALJ rejects limitations or determines that they do not impact Plaintiff's ability to maintain employment, these findings must be supported by substantial evidence.

**V.     Conclusion**

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) propound a complete and adequate hypothetical question to the VE in accordance with the standards set forth in this decision; and 2) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** in Jacksonville, Florida, this 21st day of February, 2007.

*[signature]*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc2

Copies to:

Counsel of Record